IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHANITA BROWN and JOYCE A. WILLIAMS, as next friend of M.B., a minor child,  :<br><br>   Plaintiffs,  :<br>   :<br>v.  :<br>   :<br>LAMAR COUNTY SCHOOL DISTRICT, LAMAR COUNTY COMPREHENSIVE HIGH SCHOOL, and LAMAR COUNTY BOARD OF EDUCATION,  :<br><br>   Defendants.  : | Civil Action No.<br>5:06-CV-294 (HL) |

### ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 19) in which Defendants assert they are entitled to judgment as a matter of law with respect to all claims asserted. For the reasons explained herein, Defendants' Motion is granted.

### I.  Factual Background

Viewing the evidence in the light most favorable to Plaintiffs as the non-moving party, the Court finds as follows. Plaintiff Shanita Brown and her younger sister M.B. were students at Lamar County High School during the 2004-2005 school year. At the time, Brown was seventeen years old and in the eleventh grade, while

1

M.B. was fifteen years old and in the ninth grade. Some time after Christmas break in early 2005, M.B.'s World History teacher, Tyshon Byrd, showed both Brown and M.B. a digital photograph of his genitals on his cellular telephone. Although M.B. told her sister about the incident, it is undisputed that neither Brown nor M.B. told any adult or school employee about the incidents until after the principal of the school, Mr. Bacon, had instituted an investigation into Byrd's conduct.

On February 9, 2005, Mary Smith, a teacher at Lamar County High School, informed Laura Standard, the Assistant Principal of the school, that she had overheard a conversation in the hallway in which several unidentified students were talking about Byrd and that he had showed a picture of his genitals to certain students. Through a quick investigation Standard was able to determine that Smith had overheard the conversation of Shamonica Carter and Monika Wells. Standard then informed Principal Bacon of the allegations, and Bacon instructed Standard to ask Sarah Austin, also a teacher at the school, to speak with the girls regarding the allegation.

The next day, Austin spoke with Carter and Wells, and both students admitted that they had seen pictures of Byrd's genitals. After conferring with Principal Bacon the next day, Standard called Carter and Wells into her office to speak with them regarding Byrd's conduct. After discussing the incident with Carter and Wells, Standard reported her findings to Principal Bacon and also informed Counselor Beverly McClellon of the allegations.

During the course of the next week, many students were called to speak with Principal Bacon or Standard about Byrd's conduct. One by one, students began to admit that they too had seen the picture of Byrd's genitals. Accordingly, students from each of Byrd's classes were randomly selected and interviewed. Both Plaintiff Brown and M.B. were interviewed during this time and stated that they had seen the photograph of Byrd's genitals.

Meanwhile, Principal Bacon, who happened to be renting a home to Byrd, asked Byrd's roommate, Counselor Silveri, to try to discreetly review Byrd's cellular telephone to determine wether there were any inappropriate pictures on the device. Reportedly, no images were found.

On February 17, 2005, a meeting was held between the various students who allegedly saw a photograph of Byrd's genitals, school administrators, and Byrd. Plaintiff Brown was present at the meeting; however, her sister M.B. was not. At the meeting the students were repeatedly asked by various school officials if they had seen a picture of Byrd's genitals. Each time the students answered in the affirmative. As a result of the investigation, Byrd was terminated when he attempted to report to work on the morning of February 28, 2005.[1]

Plaintiffs then filed suit against Defendants Lamar County School District,

---

[1] The Court notes that Lamar County Schools were out for Winter Break the week prior to February 28, 2005. Thus, classes were not held.

Lamar County Comprehensive High School, and Lamar County Board of Education[2] asserting a claim based on a violation of Title IX of the Education Amendments of 1972 ("Title IX") and a claim under 42 U.S.C. § 1983 based on the Equal Protection Clause of the Constitution.

## II. Analysis

*A. Summary Judgment Standard*

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995). The Court may not, however, make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court

---

[2] The Court notes that Defendants argue that Defendants Lamar County Board of Education and Lamar County Comprehensive High School are not legal entities. For the purpose of this Motion only, the Court assumes without deciding that all Defendants are proper parties to this action.

of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

*B. Title IX*

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a) (2000). Although the language of the statute charges federal agencies with enforcing the law, the Supreme Court of the United States held that Title IX is also enforceable through an implied private right of action. Cannon v. Univ.

5

of Chi., 441 U.S. 677, 709 (1979). Furthermore, the Supreme Court has held that sexual harassment of a student by a teacher is actionable discrimination for the purpose of Title IX. Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 74-76 (1992).

Cases involving teacher-on-student sexual harassment are government by the Supreme Court's landmark decision in Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998). In Gebser, the Court rejected the argument that school districts should be held liable for sexual harassment based on principles of respondent superior or constructive notice and concluded a school district must have actual notice of the alleged harassment to be held liable. Id. at 290. Accordingly, plaintiffs "seeking to recover damages against a school district for teacher-on-student sexual harassment must establish two things to survive summary judgment: (1) a school district official with the authority to take corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct." Sauls v. Pierce County Sch. Dist., 399 F.3d 1279, 1284 (11th Cir. 2005) (citing Gebser, 524 U.S. at 290-93; Davis v. Dekalb County Sch. Dist., 233 F.3d 1367, 1371 (11th Cir.2000)). Here, Defendants argue both that the school district lacked actual notice of the alleged sexual harassment and, once learning of the harassment, did not act with deliberate indifference.

1. Notice

"A school district must have actual notice before it can be held liable in

damages for intentional discrimination based on sex." Davis, 233 F.3d at 1372. (citing Gebser, 524 U.S. 274, 287-89). Actual notice is achieved by directly notifying a supervisor who qualifies as an "appropriate person." Gebser, 524 U.S. at 290. "An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." Id. Thus, in order to establish actual notice, a plaintiff must show that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination." Id.

Defendants in this case contend the school district did not have actual notice until February of 2005, which was after the alleged harassment occurred in this case. Plaintiffs do not dispute Defendants' contention that they learned of the specific harassment against Brown and M.B. for the first time in February of 2005, but instead argue Defendants knew or should have known that Byrd was sexually abusing students based on a rumor circulated months earlier that Byrd had impregnated a student.

In the fall of 2004, a rumor began circulating that Byrd had impregnated a student. As a result of this rumor, Principal Bacon initiated an extensive investigation into the matter to determine whether there was any merit to the rumor. Bacon not only met with the student who was the subject of the rumor, but also met with her parents. Throughout the entire investigation, the student denied that Bryd had impregnated her or had any inappropriate contact with her. In fact, Bacon was

7

unable to find any evidence supporting the rumor that Byrd was engaged in any inappropriate conduct with the student. Accordingly, the Court cannot conclude that the rumor at issue here was sufficient to alert Defendants to the possibility that Byrd would sexually harass Plaintiffs. Moreover, even assuming the rumor was sufficient to put Defendants on notice, Defendants responded to the rumor with anything but deliberate indifference.

### 2. Deliberate Indifference

Even assuming Plaintiffs were able to establish Defendants had actual notice of Byrd's harassment, Plaintiffs must also establish that the school district's response amounted to a deliberate indifference to discrimination. In other words, Plaintiffs must show that, after learning of the discrimination, Defendants' "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 648 (1999). Moreover, "a school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective in stopping a teacher from harassing the plaintiffs." Sauls, 399 F.3d at 1285 (11th Cir. 2005) (citing Davis, 233 F.3d at 1375). Thus, "the relevant inquiry is not whether the measures taken were effective in stopping discrimination, but whether the school district's actions amounted to deliberate indifference." Id.

In this case, Plaintiffs do not dispute that, upon learning of the alleged harassment, Defendants conducted an eight-day investigation, which resulted in the

8

termination of Byrd, but rather take issue with the way the investigation was handled. First, Plaintiffs assert that Byrd should have been immediately removed from the classroom when Defendants first learned of the allegations. According to Plaintiffs, this was necessary to protect the children from further harassment. Second, Plaintiffs argue Defendants improperly forced the victims of the alleged harassment to confront their harasser by questioning the students involved about the harassment in the presence of Byrd.

Although removing Byrd from the classroom immediately and questioning the alleged victims without Byrd present might have been prudent acts, Defendants' failure to do so does not amount to deliberate indifference.  After learning of the harassment from a teacher who overheard a student's conversation, the administration of the school carried out a methodical and through investigation. Eight days after the initial allegation, Byrd's employment was terminated. In light of the circumstances surrounding the allegations and investigation, the Court cannot conclude that allowing Byrd to remain in the classroom or questioning the alleged victims in Byrd's presence was clearly unreasonable.  Furthermore, there is no evidence to suggest that allowing Byrd to remain in the classroom or questioning the alleged victims in the presence of Byrd compromised the investigation or resulted in any further harassment. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Plaintiffs Title IX claims.

C.   § 1983

Plaintiffs also assert a claim under the Equal Protection clause of the Constitution through 42 U.S.C. § 1983. As with harassment under Title IX, school districts may not be held liable under § 1983 based on the theory of respondent superior. Bd. Of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). Instead, "[t]o impose liability . . . under 1983, the plaintiff must identify a municipal "policy" or "custom" causing the deprivation of federal rights." Sauls, 399 F.3d at 1287 (citing Brown, 520 U.S. at 403). In addition, "[a] plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." Brown, 520 U.S. at 407 (quoting City of Canton v. Harris, 489 U.S. 378, 388, (1989)).

Here, Defendants argue they are entitled to judgment as a matter of law because Plaintiffs have failed to identify any particular policy or custom which would infringe upon Plaintiffs' constitutional rights. In response, Plaintiffs now apparently argue Defendants acted with deliberate indifference because they failed to prevent Principal Bacon from renting property to Byrd. According to Plaintiff, because Bacon rented property to Byrd, Bacon benefitted financially by letting "Byrd remain in the classroom and not imposing any punishment on him until Bacon realized that these victims would not be intimidated by him and was left no other choice." (Pls.' Br. Opp'n at 20.)

Initially, the Court is unclear as to how Defendants' alleged policy of allowing

10

Principals to rent property to teachers can amount to a policy that deprived Plaintiffs of their rights. Other than Plaintiffs' blanket speculation, there is no evidence that shows that the business relationship between Bacon and Byrd prolonged any alleged harassment or adversely effected the investigation in any way. Furthermore, it is clear that the alleged policy was certainly not the moving force behind Byrd's actions. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Plaintiffs § 1983 claims.

## III.   Conclusion

As explained herein, Defendants' Motion for Summary Judgment (Doc. 19) is granted.

**SO ORDERED**, this the 30th day of September, 2008.

**/s/ Hugh Lawson**
**HUGH LAWSON, Judge**

scs